IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:20-CV-33-D

| | | |
|---|---|---|
| ERIC CENTENO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WES TRIPP, WARREN AARON SMITH, and THE OHIO CASUALTY INSURANCE COMPANY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

On January 14, 2020, Eric Centeno ("Centeno" or "plaintiff") filed a complaint against Halifax County Sheriff Wes Tripp ("Tripp"), Warren Aaron Smith ("Smith"), and The Ohio Casualty Insurance Company as surety on the official bond of the Sheriff of Halifax County ("surety") [D.E. 1-2]. Centeno alleges an excessive force claim under 42 U.S.C. § 1983 against Smith in his individual capacity, an assault claim under North Carolina law against Smith in his individual capacity and Tripp in his individual and official capacities, and a battery claim under North Carolina law against Smith in his individual capacity and Tripp in both his individual and official capacities. See id. at ¶¶ 29–37, 38–44, 45–51.[1] On February 25, 2020, Tripp removed the action to this court [D.E. 1, 1-2]. On May 16, 2020, Tripp moved for judgment on the pleadings concerning Centeno's claims against him in his individual capacity [D.E. 11] and filed a memorandum in support [D.E. 12]. On April 6, 2020, Centeno responded in opposition [D.E. 14]. On April 10, 2020, Tripp replied

---

[1] On June 11, 2020, Centeno amended his complaint. See [D.E. 18]. In his amended complaint, Centeno replaced defendant John Doe Corporation with The Ohio Casualty Insurance Company as surety, and Centeno alleged assault and battery claims against Tripp in his individual capacity. See id. at ¶¶ 38–44, 45–51.

[D.E. 15]. As explained below, the court grants Tripp's motion for judgment on the pleadings concerning Centeno's assault and battery claims against Tripp in his individual capacity.

I.

In 2013, Tripp began serving as Halifax County Sheriff. See Am. Compl. [D.E. 18] ¶ 10. On June 12, 2017, Smith—a deputy sheriff for Halifax County—responded to call concerning a domestic incident at Centeno's home. See id. at ¶¶ 16–17. Earlier that day, Centeno and his wife got into an argument, and Centeno's stepdaughter called 911. See id. When Smith arrived, Centeno and his wife were not arguing. See id. at ¶ 17. After speaking with Centeno's wife and stepdaughter, Smith handcuffed Centeno's wife. See id. at ¶ 18. Centeno approached Smith and attempted to explain the domestic dispute. See id. at ¶ 19. Smith responded by telling Centeno to "shut [his] mouth" or he would "beat" Centeno. See id. Smith also told Centeno that he was not having a good day and would arrest Centeno if he did not stop talking. See id. at ¶ 20. Centeno asked on what basis Smith would arrest Centeno. See id. Smith then pulled Centeno down the front porch steps, forcibly put Centeno on the ground with his arm behind his back, and handcuffed Centeno with his face on the concrete walkway. See id. at ¶ 21. During the arrest, Centeno hit his head on the ground. See id.

Smith led Centeno to the back seat of his police car and told Centeno that he would close the door on his legs if Centeno did not quickly get into the car. See id. at ¶ 22. Smith took Centeno to a jail, but was told to take Centeno to a hospital. See id. at ¶ 24. At the Halifax Regional Medical Center, Centeno received treatment in the hospital's emergency room. See id. Centeno was released from the hospital, taken to jail, and charged with resisting arrest and assault on a female. See id. at ¶ 25. Later, Centeno was admitted to the hospital for treatment for his injuries. See id.

2

Centeno suffered injuries to his shoulder, arm, and eye. See id. at ¶ 27. Centeno also suffered from post-traumatic stress disorder symptoms. See id. at ¶ 28. The Halifax County Sheriff's Office fired Smith because of his arrest of Centeno. See id. at ¶ 26. The county also dropped all criminal charges against Centeno. See id.

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). The same standard controls a motion for judgment on the pleadings as a motion to dismiss under Rule 12(b)(6). See Burbach Broad. Co., 278 F.3d at 405–06.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and

3

reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The motion to dismiss requires the court to consider Centeno's state-law claims against Tripp, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Centeno argues that Tripp is individually liable for Smith's assault and battery.[3] In support, Centeno contends that under North Carolina law, a sheriff is liable for the acts and omissions of his deputy, and that this principle implicitly means that a sheriff is individually liable for a deputy's official acts. Accordingly, Centeno asserts that he has plausibly alleged assault and battery claims against Smith. See [D.E. 14] 4–6.

The North Carolina Constitution creates the office of the sheriff, and the sheriff is "alone responsible for carrying out his or her duties." Young v. Bailey, 368 N.C. 665, 671, 781 S.E.2d 277, 280 (2016); see N.C. Gen. Stat. § 162-24. In North Carolina, "the sheriff has singular authority over his or her deputies . . . and is responsible for their actions." Bailey, 368 N.C. at 669, 781 S.E.2d at 280. The Supreme Court of North Carolina has stated that "[a] sheriff is liable for the acts or omissions of his deputy as he is for his own." State ex rel. Cain v. Corbett, 235 N.C. 33, 38, 69 S.E.2d 20, 23 (1952) (quotation omitted); see Bailey, 368 N.C. at 671, 781 S.E.2d at 281; Styers v. Forsyth Cty., 212 N.C. 558, 564, 194 S.E. 305, 309 (1937); Prior v. Pruett, 143 N.C. App. 612, 621, 550 S.E.2d 166, 172 (2001); cf. Jenkins v. Medford, 119 F.3d 1156, 1163–64 (4th Cir. 1997); McCollum v. Stahl, 579 F.2d 869, 872 (4th Cir. 1978); Bass v. Bunn, No. 7:08-cv-71-BR, 2009 WL 10705552, at *9 (E.D.N.C. June 17, 2009) (unpublished).

---

[3] Initially, Tripp argues that if Centeno alleges a claim under 42 U.S.C. § 1983, the claim fails because respondeat superior does not apply under section 1983, and Centeno did not plead Tripp's personal involvement in Smith's arrest of Centeno. See [D.E. 12] 5–6. The amended complaint, however, does not name Tripp in Centeno's section 1983 claim. See Compl. [D.E. 1-2] ¶¶ 29–37; Am. Compl. [D.E. 18] ¶¶ 29–37.

5

Centeno does not identify—and this court's extensive research did not reveal—a North Carolina appellate court that held a sheriff individually liable for a deputy's intentional torts. Thus, it appears that Centeno is asking the court to expand North Carolina's public policy concerning a sheriff's individual liability for the intentional torts of a deputy. The court declines the invitation. See, e.g., Carteret-Craven Elec. Membership Corp., 506 F.3d at 314; Danek Med., Inc., 182 F.3d at 286.

Under North Carolina law, a sheriff may be liable for the sheriff's deputy's intentional torts only in the sheriff's official capacity. In Styers, the Supreme Court of North Carolina expounded on the common law principles concerning a sheriff's liabilities for a deputy's actions. The Styers court held that "[t]he acts of the deputy are the acts of the sheriff" and that "the sheriff is held liable on his official bond for the acts of his deputy." Styers, 212 N.C. at 564, 194 S.E. at 308. In its holding, the Styers court first noted a consensus among sister state courts concerning the principle of a sheriff's liability on the official bond for the deputy's official conduct. See id., 212 N.C. at 562, 194 S.E. at 307–08. The Styers court went on to explain that "for what [the deputy] does the sheriff is made responsible the same as if he had officially done the same thing," and that the sheriff is liable "for the official acts of the deputy . . . as if they had been done by himself." Id., 212 N.C. at 564, 194 S.E. at 308 (quotation omitted). The court then summarized its holding, stating that "the responsibility of a sheriff for the acts of his deputy, done colore officii, rests upon the principle that the hand that does or procures the act is liable." Id., 212 N.C. at 564, 194 S.E. at 309.

The Supreme Court of North Carolina reiterated Styers's holding in Cain. The Cain court held that a "the Sheriff and the surety on his bond" were "proper and necessary parties" to a plaintiff's claims against a sheriff's deputy concerning false arrest and assault claims. Cain, 235 N.C. at 39, 69 S.E.2d at 24. The Cain court reasoned that this conclusion followed necessarily from

6

the court's discussion in Styers, an opinion from which the Cain court quoted extensively. See id., 235 N.C. at 38, 69 S.E.2d at 23; see also Prior, 143 N.C. App. at 621, 550 S.E.2d at 172.

In light of Styers and Cain, this court predicts that the Supreme Court of North Carolina would hold that a sheriff is liable for a deputy's official actions only in the sheriff's official capacity. As discussed, no North Carolina appellate court has held that a sheriff is individually liable for the intentional torts of that sheriff's deputy. To the contrary, Styers and Cain discuss the sheriff's liability in the context of the sheriff's surety or official bond, i.e., liability insurance for harms resulting from the sheriff's official acts. This conclusion makes sense. North Carolina law abrogates public official immunity for sheriffs when a plaintiff names a sheriff in his official capacity and adds the sheriff's surety as a party to the action, but not when the sheriff is named individually. See N.C. Gen. Stat. § 58–76–5; Thomas v. Sellers, 142 N.C. App. 310, 314, 542 S.E.2d 283, 286 (2001). Accordingly, the court grants Tripp's motion for judgment on the pleadings concerning Centeno's assault and battery claims against Tripp in his individual capacity.

III.

In sum, the court GRANTS Tripp's motion for judgment on the pleadings concerning Centeno's claims against Tripp in his individual capacity.

SO ORDERED. This 30 day of June 2020.

JAMES C. DEVER III
United States District Judge